## Smythe, Appellant, *v.* Shaw.

*Contract—Rescission—Assignment of contract—Evidence.*

Where a person having an order in writing for the sale and delivery of goods, has given to the purchaser in writing a right to rescind the order, if the latter does not resell the goods within a given time, and the seller assigns his rights under the contract to another, and the assignee notifies in writing the purchaser, of the assignment, and in repeating the specifications says "there are no other conditions attached to the order, not expressed in the contract," the purchaser does not lose his right to rescind, where there is nothing orally to show that he agreed to waive such right.

Argued April 26, 1915. Appeal, No. 172, April T., 1915, by plaintiffs, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 24, on verdict for defendants in case of J. Henry Smythe, doing business as the Sunshine Publishing Company, now for use of American Lithographic Company, v. John I. Shaw and A. Abijah Shaw, doing business as Shaw Brothers. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before EVANS, J.

At the trial it appeared that J. Henry Smythe traded as the Sunshine Publishing Company.

The following correspondence was in evidence and is essential to an understanding of the case.

"Pittsburgh, February 27, 1911.
"The Sunshine Publishing Company,
    "Philadelphia, Pa.
    "Gentlemen : We will take one hundred thousand cop-

ies of your Juvenile Picture Books, assorted, at the same price that Dilworth Brothers Co. pays; namely $13.00 per 1,000. These books to be delivered to us with blank outside back cover. These we will sell within a period of 3 or 4 or 5 months from date of first delivery.

"Yours very truly,

"SHAW BROTHERS."

"Pittsburgh, Feb. 27, 1911.

"Shaw Brothers,

"Pittsburgh, Pa.

"Gentlemen: If, within a reasonable time, say, four or five months from date of first delivery, you do not get rid of your 100,000 books, we will guarantee to cancel said contract, or any part thereof. Yours truly,

"SUNSHINE PUBLISHING COMPANY,

"(Signed) J. HENRY SMYTHE,

"President."

"New York, March 7, 1911.

"Shaw Brothers,

"Gentlemen: We beg to acknowledge receipt of your signed order through the Sunshine Publishing Company, Dr. J. Henry Smythe, President, Philadelphia, Pa., for books as per specifications herewith, which they instruct us to ship, bill and collect for their account.

"Yours very truly,

"AMERICAN LITHOGRAPHIC CO.

"P. S.—Please let us know by return mail if this is in accordance with your understanding of the order."

With this was the following specification:

"Quantity, 100,000 assorted books; price, $13.00 per thousand; terms, thirty days net from the date of the bill; shipment, books to be shipped in four weeks time. There are no other conditions attached to this order not expressed in this contract."

"Pittsburgh, March 15, 1911.

"American Lithographic Company,

   "New York.

"Gentlemen: We hereby confirm our order for the Sambo Picture Books. They will be ready, we under-stand, about a month from now. This first lot we have already sold, and we purpose to unload a good many more of these four picture books, the next six months.

"We have received no communication from you, at any time, and send you this letter, only because Dilworth Brothers have done the same, and Rev. J. Henry Smythe has asked us to do so. We intend to handle this terri-tory in our mutual interests, for all it is worth.

"Yours very truly,

"SHAW BROTHERS."


"Pittsburgh, July 10, 1911.

"J. Henry Smythe, President,

   "Sunshine Publishing Co.,

      "Philadelphia, Pa.

"Dear Sir: We wish to cancel our contract with you for 100,000 Picture Books, according to your agreement of February 27th, signed by your Mr. J. Henry Smythe.

"Respectfully yours,

"SHAW BROTHERS,

"Per (Signed) A. C. SHAW."


Mr. Smythe when on the witness stand testified that "they (meaning Shaw Brothers,) knew that I did not print the books; they knew that I did not manufacture books, and they knew that the order was to be assigned to the American Lithographic Company, as all other orders are, and the books were billed from the American Lithographic Company to Shaw Brothers by the Ameri-can Lithographic Company."

There was no positive evidence that Shaw Brothers had any knowledge with regard to the relationship be-

tween Smythe and the American Lithographic Company not contained in the letter of March 27th.

The suit was brought to recover $1,300 for the books which the defendants refused to receive or pay for.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Wm. M. Hall,* for appellant.—The American Lithographic Company had a contract with Shaw Brothers, upon which it had a right to sue, not as use-plaintiff, but in its own right: Snow v. Thompson Oil Co., 59 Pa. 209.

The court should have left to the jury the question of assignment: Menner v. Del. & Hudson Canal Co., 7 Pa. Superior Ct. 135; Eardley v. Keeling & Ridge, 10 Pa. Superior Ct. 339; Hedricks v. Schuylkill Township, 16 Pa. Superior Ct. 508; Murphy v. Matthews, 43 Pa. Superior Ct. 286; Dixon & Co. v. Daub, 17 Pa. Superior Ct. 168; Dinan v. Supreme Council, Etc., 210 Pa. 456; Ruple v. Bindley, 91 Pa. 296; Merchants & M. Bank v. Barnes, 47 L. R. A. 737.

Under the circumstances, Shaw Brothers are estopped from cancellation: Faull v. Tinsman, 36 Pa. 108.

*Louis Caplan,* with him *Geo. E. Reynolds,* for appellees.

OPINION BY TREXLER, J., October 11, 1915:

Shaw Brothers in writing ordered of the Sunshine Publishing Co. 100,000 copies of certain juvenile picture books. On the same day the Publishing Co., through J. H. Smythe gave Shaw Brothers a letter stating, "If within four or five months from the date of the first delivery, Shaw Brothers do not get rid of the 100,000 books, we guarantee to cancel said contract or any part thereof."

The Sunshine Publishing Co. through Smythe turned over the order to the American Lithographic Co. The plaintiff contends that the contractual relations between Shaw Brothers and Smythe thereby ceased and that thereafter the dealings were entirely between the American Lithographic Co. and Shaw Brothers. Whether this was so or not must be determined by the language contained in the following letter written by the American Lithographic Co. to Shaw Brothers: "Gentlemen: We beg to acknowledge receipt of your signed order to the Sunshine Publishing Co., Dr. J. Henry Smythe, President, Philadelphia, Pa., for books as per specifications herewith, which they instruct us to ship, bill and collect for their account. Yours very truly, American Lithographic Co. P. S.—Please let us know by return mail if this is in accordance with your understanding of the contract." With this were the following specifications: "Quantity, 100,000 assorted books; price, $13.00 per M.; terms, 30 days net from date of bill; shipment, books to be shipped in four weeks' time. There are no other conditions attached to this order, not expressed in this contract."

If Shaw Brothers had no notice that the Sunshine Publishing Co. had assigned all its interest in the contract to the Lithographic Co. their liability must be determined under the written contract they had with the Sunshine Co. and under that contract it is admitted that they had the right of rescission. The whole point in the case is whether by any act of theirs or by the letter written by the Lithographic Co. to them, above quoted, their right of rescission terminated. We think the lower court was right in holding that there was no evidence on this question to go to the jury. The construction of the letter was for the court. The letter shows that the activities of the Lithographic Co. in the matter were to be on behalf of the Sunshine Publishing Co. The former was to ship, bill and collect for the latter's account. The language shows no termination of Smythe's interest in the

contract. This being so, the right of rescission was not affected. It is true that the letter stated, "There are no other conditions attached to this order, not expressed in this contract," but as long as the contract existed between the Sunshine Co. and the Shaws, the insertion of this clause did not affect that contract. The Sunshine Co. could not by making a contract with the Lithographic Co. to print the books, without mentioning about a rescission, cancel its written engagement with Shaw Brothers to allow such rescission unless the Shaws agreed thereto or by their acts signified their acquiescence.

There was some testimony in the case given by Smythe that Shaw Brothers knew of the absolute assignment of the contract to the Lithographic Co. but the court properly paid no attention to it for the reason that although Smythe testified as to the knowledge of Shaw Brothers, the testimony was merely a conclusion unsupported by the narration of any facts.

Whatever wrong was done to the use-plaintiff was in that Smythe assigned his contract and gave no notice to his assignee that he had entered into a written obligation to guarantee its rescission under certain conditions. His failure to do so caused the trouble and the consequent loss to the use-plaintiff should not be visited upon the defendant under the evidence submitted in the case.

The assignments of error are overruled and the judgment is affirmed.